AO 102 (01/09) Application for a Tracking Warrant (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe<br>the object or property to be used for tracking)*<br><br>THE BLACK CADILLAC XTS BEARING OHIO LICENSE<br>PLATE NUMBER JUT5241; VIN # 2G61P5S33D924336 | ) ) ) ) ) ) ) Case No. 3:23MJ348 |

## APPLICATION FOR A TRACKING WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of

__21__ U.S.C. § __841, 843, & 846__ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ property designed for use, intended for use, or used in committing a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
Black Cadillac XTS, OH license plate UT5241, VIN # 2G61P5S33D924336; and/or 130 Laura Avenue, Dayton, OH

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Gregory A. Orick, DEA
*Applicant's printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__FaceTime_____ *(specify reliable electronic means)*.

Date: __8/17/23__

_____
*Judge's signature*

City and state: __Dayton, Ohio__

Hon. Sharon L. Ovington, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF THE BLACK CADILLAC XTS BEARING OHIO LICENSE PLATE NUMBER JUT5241, VIN # 2G61P5S33D924336 | Case No. 3:23MJ348 <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Gregory A. Orick, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on the Black Cadillac XTS bearing Ohio license plate number JUT5241 and vehicle identification number 2G61P5S33D924336 ("the SUBJECT VEHICLE"), which is registered to T.M. [1] at 1707 West Stewart Street, Dayton, OH. Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of drug trafficking activity in violation of Title 21 U.S.C. §§ 841(a)(1) (Possession with Intent to Distribute and Distribution of Controlled Substances), 843(b) (Use of a Telephone Communication Facility to Facilitate a Title 21 Offense), and 846 (Conspiracy to Commit a Title 21 Offense), and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

---

[1] I am using T.M.'s initials to protect his/her privacy, since s/he is not currently suspected of a crime.

2. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"). As such, I am an officer of the United States who is empowered by law to conduct criminal investigations of and to make arrests for offenses as detailed in 21 U.S.C. § 878.

3. I have been a DEA TFO since August 2019. I have been employed in law enforcement since December 1999. I currently serve as a detective with the Dayton Police Department ("DPD"). I have been assigned to Patrol Operations and am currently assigned to the Narcotics Bureau. I have extensive prior experience in investigating drug cases that resulted in successful prosecutions of persons involved in the trafficking of drugs and gun related offenses. I have conducted narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics and weapons, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution and sales of controlled substances often operate. These subjects usually attempt to conceal their identities and the locations at which they reside, operate, or store drugs and drug proceeds.

4. It has been my experience while conducting other drug investigations that operating drug houses and/or apartments continue to diversify and it is not uncommon to recover different types of illegal drugs from inside the residence. It is also not uncommon to encounter individuals in possession of illegal drugs after leaving from operating drug houses/apartments. In addition, it has been my experience that firearms are commonly kept and located inside operating drug houses and/or apartments.

5. The facts in this affidavit come from my personal observations, my training and experience, the review of certain records, as well as information obtained from other detectives and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### A. Overview of the Investigation

6. The United States, including the Drug Enforcement Administration Dayton Resident Office, is conducting a criminal investigation of Ricardo BUSBEE ("BUSBEE") and others concerning potential violations of federal drug trafficking laws. Throughout the investigation into BUSBEE, I have learned that BUSBEE and others, including but not limited to Torrence BUSBEE, Dalaquan MCGUIRE, Demarion GALLOWAY, and Doretha HUGHES, are part of a Drug Trafficking Organization ("DTO") selling large quantities of fentanyl and/or fentanyl pills, cocaine, and methamphetamine in the greater Dayton, Ohio area.

### B. Law enforcement learned that drugs are being sold from the residence located at 130 Laura Avenue, Dayton, Ohio.

7. On or about September 23, 2022, based on information received from a confidential and reliable informant of the DPD ("CS1"),[2] an amount of fentanyl was purchased from 130 Laura Avenue, Dayton, OH. I, along with DPD Sergeant Kelly Hamilton, witnessed this drug transaction, which took place at the rear of this location.

---

[2] CS1 has provided information to law enforcement in the past that has been independently corroborated. CS1 has never provided materially false information to law enforcement. CS1 is providing information to law enforcement for financial renumeration.

8. Between September 23, 2022, and June of 2023, I continued to surveil 130 Laura Avenue, Dayton, OH using multiple investigative techniques in the hope of identifying all members of the DTO. These surveillance techniques included both physical and electronic methods.

9. On June 13, 2023, I used an electronic device to record a constant stream of "customers" coming and going from the rear of 130 Laura Avenue, Dayton, OH. This surveillance indicated that the "customers" would either walk or drive to the rear of the building, make a phone call, and wait on the rear stoop. After a short duration, the rear entrance door would open and a hand-to-hand transaction would occur. After the hand-to-hand transaction took place, the customer would immediately leave the area. Based on my training and experience, this high volume and pattern of short-stay visitors is indicative of drugs being trafficked from this location.

10. On June 16, 2023, members of the DEA Dayton RO conducted an operation to traffic stop drivers who had engaged in the short-stay visitation at the rear of 130 Laura Avenue, Dayton, OH, that I described above. DEA used a DPD marked cruiser and K-9 officer to conduct these traffic stops. During one of these traffic stops, the driver indicated that s/he had purchased cocaine from 130 Laura Avenue, Dayton, OH.

**C. I learned that BUSBEE uses the SUBJECT VEHICLE to travel to and from 130 Laura Avenue.**

11. During the traffic stop operation on June 16, 2023, agents witnessed BUSBEE drive the SUBJECT VEHICLE. BUSBEE would enter the SUBJECT VEHICLE, which was parked in front of 130 Laura Avenue, Dayton, OH, and drive away. BUSBEE was the only occupant in the SUBJECT VEHICLE. Later that day, agents witnessed BUSBEE return to 130 Laura Avenue,

Dayton, OH in the SUBJECT VEHICLE, and park in front of the residence, then enter the residence through the front entrance door.

12. Since June 16, 2023, agents have observed BUSBEE operating the SUBJECT VEHICLE on approximately a weekly basis. Agents have not seen anyone other than BUSBEE operating the SUBJECT VEHICLE. BUSBEE regularly drives the SUBJECT VEHICLE to and from 130 Laura Avenue.

**D. The evidence suggests that the drug trafficking activities taking place at 130 Laura Avenue are significant.**

13. I received information from a DPD analyst that between January 2023 and August 2023 there have been twenty-six documented fentanyl overdoses within a six-block radius of 130 Laura Avenue, Dayton, OH. Based on my training and experience, I know that drug users often purchase drugs from a seller located near them. This reduces the cost of transportation to the user, and decreases the likelihood of the user being detected by law enforcement. Furthermore, I know, based on my training and experience, that drug users frequently ingest the drugs they purchase immediately after receiving them or soon thereafter; therefore, it is likely that drug addicts purchasing drugs from 130 Laura Avenue would take the drugs while in the vicinity. For these reasons, I believe it is likely that many, if not all, of these twenty-six overdose events stemmed from drugs purchased from 130 Laura Avenue.

14. On July 15, 2023, DPD uniformed officers responded to an aggravated robbery and felonious assault call for service at 130 Laura Avenue, Dayton, OH. Upon the officers' arrival they witnessed the victim, T.R., bleeding profusely from his/her right hand, which had been shot. T.R. pointed to 130 Laura Avenue, Dayton, OH and stated, "Apartment 1 sells drugs." T.R. said s/he knows this because "I buy drugs from them." T.R. then became uncooperative with officers

and detectives and refused medical treatment. Based on my training and experience, I know that drug trafficking is a violent enterprise. I also know that drug traffickers frequently use firearms to protect themselves, their drugs, and their drug proceeds. Based on T.R.'s statements to officers—specifically, that T.R. said that drug trafficking was taking place from Apartment 1—I believe that T.R.'s injury was related to those drug trafficking activities.

15. On July 27, 2023, DPD Detectives Mistan Bailey and John Howard responded to a fatal overdose at a residence located on Fotip Lane in Dayton, OH. Two individuals overdosed, with one surviving and the other succumbing to the narcotics. During an interview with Detectives Bailey, Howard, and myself, the survivor said that after calling BUSBEE to buy cocaine, s/he arrived at 130 Laura Avenue, Dayton, OH to pick up the cocaine. The survivor was let into Apartment 1 by MCGUIRE's girlfriend, HUGHES. HUGHES called an unknown individual to confirm the sale, then retreated to the kitchen area to collect the cocaine. After completing the transaction, the survivor returned to his/her apartment where the cocaine was divided up for use. The decedent, after inhaling the cocaine, immediately became sweaty and dizzy, coughed, and said, "What was that?" The survivor inhaled the cocaine and immediately became drowsy. The survivor also said that s/he could taste an "acetone" chemical taste to the cocaine. Both individuals then "passed out."

> E. **On August 15, 2023, BUSBEE was arrested after he drove the SUBJECT VEHICLE to a drug deal.**

16. On August 15, 2023, I was informed that the Montgomery County RANGE Task Force had arrested BUSBEE on a buy/walk operation. On that day, BUSBEE met a RANGE Task

Force Confidential Informant ("CS2")[3] to sell him/her methamphetamine. BUSBEE, using the SUBJECT VEHICLE, transported the methamphetamine, arrived at the meeting location, and sold the methamphetamine to CS2. After selling CS2 methamphetamine, BUSBEE drove the SUBJECT VEHICLE away from the area. Law enforcement then traffic stopped BUSBEE and arrested him. Law enforcement recovered from inside the SUBJECT VEHICLE the drug proceeds from BUSBEE's sale with CS2. The currency recovered was separate from other monies in BUSBEE's possession.[4] After BUSBEE's arrest, the SUBJECT VEHICLE was towed to Sandy's Towing impound lot in accordance with police policy and procedures.

      17. On August 15, 2023, I was conducting surveillance at 820 Osmond Avenue, Dayton, Ohio. I know that this location is BUSBEE's personal residence based on observations I've made over the course of my investigation—such as seeing BUSBEE enter the premises using a key to unlock the front door—and because BUSBEE lists it as being his address on his Ohio Identification Card. At approximately 6:35 p.m.—about two hours after BUSBEE had been arrested—I observed unknown individuals removing items from BUSBEE's residence at 820 Osmond Avenue, Dayton, Ohio. This activity is consistent with attempting to conceal evidence from law enforcement. I believe that BUSBEE directed these unknown individuals to move incriminating evidence because of a recorded phone call I listened to that BUSBEE had placed

---

[3] CS2 has provided information to law enforcement in the past that has been independently corroborated. CS1 has never provided materially false information to law enforcement. CS2 is providing information to law enforcement for financial renumeration.

[4] Prior to the controlled buy, agents recorded the serial numbers of the currency CS2 used to complete the transaction with BUSBEE, which enabled law enforcement to confirm the currency seized from BUSBEE was the same.

from the Montgomery County Jail following his arrest. During this jail call, BUSBEE instructed the person on the other line to clean out his (BUSBEE's) place.

18. In order to track the movement of the SUBJECT VEHICLE effectively and to decrease the chance of detection, I seek authorization to install an electronic GPS tracking device on the SUBJECT VEHICLE, while it is in the Southern District of Ohio. It may be necessary to enter onto private property to install, service and remove the tracking device as the SUBJECT VEHICLE has been observed parked in driveways and on other private property. The SUBJECT VEHICLE is currently impounded at Sandy's Towing impound lot located at 1541 South Broadway Street, Dayton, OH.

19. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. Nighttime hours will assist investigators, under the concealment of darkness, to install/maintain/remove the tracking device to avoid detection from BUSBEE or others. Due to T.R.'s gunshot wound, described above, I believe it is likely that BUSBEE has access to firearms.

20. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the DEA or their authorized representatives, including but not limited to other law

enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the SUBJECT VEHICLE within the Southern District of Ohio within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter 130 Laura Avenue, Dayton, OH, and/or move the SUBJECT VEHICLE to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Southern District of Ohio.

22. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delayed notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

23. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the DEA, federally deputized state and local law enforcement

officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

Respectfully submitted,

_____
Gregory A. Orick
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on this 17 day of August, 2023.

_____
UNITED STATES MAGISTRATE JUDGE